**IN THE COURT OF APPEALS OF IOWA**

No. 21-1728
Filed March 30, 2022

**IN THE INTEREST OF A.H. and A.H.,**
**Minor Children,**

**STATE OF IOWA,**
        Appellant.

_____


        Appeal from the Iowa District Court for Calhoun County, Joseph McCarville,

District Associate Judge.


        The State appeals the dismissal of the adjudication petitions.  **REVERSED**

**AND REMANDED WITH DIRECTIONS.**


        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellant State.

        Christine Sand of Wild, Baxter & Sand, PC, Guthrie Center, for appellee

mother.

        Mark J. Rasmussen, Jefferson, for appellee father.

        Mary M. Lauver of Lauver Law, Lake City, attorney and guardian ad litem

for minor children.


        Considered by Vaitheswaran, P.J., Chicchelly, J., and Blane, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**BLANE, Senior Judge.**

The State appeals the juvenile court's order dismissing the child-in-need-of-assistance (CINA) petitions regarding A.H. and A.H., aged four and eight. Neither parent filed appellate briefs. On our de novo review, we find the State presented clear and convincing evidence that the children should be adjudicated as CINA. We reverse and remand with directions to enter adjudication orders.

On June 26, 2021, the mother[1] came into the emergency department at the local hospital in the midst of a mental-health episode and committed herself voluntarily. She reported her husband was physically and verbally abusive to herself and their two children, as well as forcing her to snort methamphetamine. She tested positive for methamphetamine at that time. After contacting the father, the DHS removed the children from the home and placed them with the paternal grandmother.

The DHS initiated a child abuse assessment. In the hospital, the mother reported that the father had head-butted her in front of the children. She stated she used methamphetamine about once per week. In addition to methamphetamine, she reported both she and the father use marijuana. She said she used when the children were asleep, and the father used in the garage. The mother was recommended to enter an inpatient substance-abuse treatment

---

[1] At the hearing, the mother acknowledged she is an American Indian and a member of the Sioux Nation. The Iowa Department of Human Services (DHS) conceded that if the children were removed, the agency would have to notify the tribe pursuant to the Indian Child Welfare Act, but since removal was not being requested such notice was not required at this time.

center. But, after discussing it with the father, they decided to do outpatient treatment together.

The father initially denied use of illegal substances and any allegations of abuse. He also denied the mother's use of illegal substances. He acknowledged the mother has mental-health difficulties. He reported having to return from work to wake the mother up because she was not caring for the children. The paternal grandmother and the father's adult daughter reported having to do the same when they have stopped by in the morning.

The State filed petitions to adjudicate the children as CINA. The parents met with DHS and an "action plan" was developed. The parents agreed to have the children placed with the father's adult daughter while they received some services. Talking with the child protection worker (CPW), the father admitted he used methamphetamine once or twice per day. He also admitted he introduced the mother to methamphetamine about one year earlier. They agreed the father would obtain a substance-abuse evaluation, submit to drug testing, and would not leave the children alone with the mother until she addressed her substance abuse as well. But, for his first drug test, the father reported he "pissed himself" on the way to the testing site and could not do the testing. Subsequent testing was clean for methamphetamine but not always negative for marijuana.

In early July, the father completed a substance-abuse evaluation and began outpatient treatment. On July 19, urinalyses for both parents were negative for all illegal substances. But on July 22, the mother was admitted to the hospital again amid concerns for her mental health. She tested positive for marijuana but negative for all other drugs tested. On July 26, the father's urinalysis was positive

for marijuana.  At the end of July, the DHS filed a founded child abuse report for use of dangerous substances.[2]

In mid-August, the children were returned to the parents.  Family preservation services were put in place for ten days.  And in a September report to the court, DHS and the children's guardian ad litem (GAL) recommended the case be held in abeyance for three months "to see if the family is able to abide by DHS expectations," including treatment and drug testing.  At that point, DHS reported, "The home appears to be safe and the Family Centered Services [(FCS)] provider is pleased with the progress they have made.  Services should continue with DHS supervision."

That good spell did not last.  In September, the mother relapsed on methamphetamine and jumped out of the family's moving vehicle while the father was driving and the children were in the car.  On October 8, DHS reported the mother was hospitalized, suicidal, and had been discharged unsuccessfully from her substance-abuse treatment.  Consequently, DHS and the GAL changed their recommendations to adjudication.

The court held an adjudication hearing at the end of October.  By then, both parents were back in substance-abuse treatment.  The mother was attending therapy.  Although the father had given several negative drug tests for methamphetamine  and was engaged in substance-abuse treatment, he tested positive for marijuana.  And the DHS caseworker heard from the father's substance-abuse counselor that the father said he would discontinue substance-

---

[2] Additional allegations of sexual abuse, denial of critical care, and failure to provide adequate supervision were not confirmed.

abuse treatment once the CINA cases were closed. Also at the hearing, the FCS provider reported that there were ongoing mental-health concerns for the mother that were not totally resolved. She testified the children are safe in the home so long as the mother is not left with the children unsupervised. If the father "is out working and [the mother] relapses, . . . there would be a huge safety concern."

The juvenile court found the evidence inadequate to support a CINA adjudication. The court thought it was enough that the father had cooperated with substance-abuse treatment and had negative drug tests. And the court found no indication that the children are not cared for with adequate food, clothing, and shelter. But the court noted the mother's mental-health issues are "a burden" on the father and the children. Still, it credited the mother with getting her mental-health issues "treated and under control." As to the substance abuse, the court found "there is some evidence of continued substance abuse . . . within about the last month," but found there was no evidence that the mother used drugs while in a caretaking role with the children. It recognized that if the mother was parenting "alone, there would be more risk" of the children not receiving adequate care. Finally, the court warned the parents "if you go back to using meth, the kids will probably be taken away from you . . . . You can't be using meth." The State appeals.

Our review is de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). We give weight to the juvenile court's fact findings, especially on credibility, but we are not bound by them. *Id.* Our primary concern is the best interests of the children. *Id.*

The State contends the court erred in dismissing the CINA petitions and should have found the petitions supported under Iowa Code

section 232.2(6) (2021), paragraphs (c)(2) and (n). The State bears the burden of proving the allegations in its petition by clear and convincing evidence. Iowa Code § 232.96. Under section 232.2(6), paragraph (c)(2), the state must prove the children "ha[ve] suffered or [are] imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child[ren]'s parent . . . to exercise a reasonable degree of care in supervising the child[ren]." *Id.* § 232.2(6). Additionally, the State alleged the "parent's . . . mental capacity or condition, imprisonment, or drug or alcohol abuse result[ed] in the child[ren] not receiving adequate care." *Id.* § 232.2(6)(n).

We agree with the juvenile court that the State did not prove the allegations under paragraph (n). The record contains no evidence about how the children have been affected by the parents' past drug use. The child abuse assessment found the parents used methamphetamine on the property where they lived with the children. But there are no school reports or therapy notes or observations on the children about their parents' drug use, other than notes from the GAL that the children are bonded to their parents.

Nonetheless, we find clear and convincing evidence under paragraph (c)(2) to support a finding the children "ha[ve] suffered or [are] imminently likely to suffer harmful effects." We find harmful effects when "there was harm to the child's physical, mental, or social well-being or such harm was imminently likely to occur." *J.S.*, 846 N.W.2d at 41–42. Specifically, the supreme court has found "a parent's active addiction to methamphetamine is 'imminently likely' to result in harmful effects" to the child. *Id.* at 42. "[A]n unresolved, severe, and chronic drug addiction can render a parent unfit to raise children." *In re A.B.*, 815 N.W.2d 764, 766 (Iowa

2012).  As for "imminently likely," "we liberally interpret the phrase . . . in CINA cases, so we do not require neglect or physical or sexual abuse be on the verge of happening before adjudicating a child as one in need of assistance."  *In re L.H.*, 904 N.W.2d 145, 150 (Iowa 2017) (altered for readability).

Despite reports that the children are adequately cared for in the home in terms of food, clothing, and shelter, we cannot conclude that they are safe there. Both parents have admitted that they use methamphetamine although their reports have been inconsistent.  The father himself introduced the mother to methamphetamine only a year before these incidents.  The mother has an ongoing substance-abuse problem and has relapsed twice during the early stages of this case.  She last relapsed about a month before the adjudication hearing.  She was recommended inpatient treatment but is only seeking outpatient.  The nature of addiction is such that we cannot expect a full recovery after the few short months of this case.  In addition, both mother and father have tested positive for marijuana. Although not as dangerous as methamphetamine, it can result in impaired caretaking and in criminal consequences that will affect the children.  There is a founded child abuse report for use of dangerous substances from the July hospitalization.  The mother also has unresolved mental-health issues that—mixed with a drug relapse—resulted in her jumping out of a moving car in front of the children.  She had to be hospitalized and ended up being unable to complete her substance-abuse treatment.  The FCS provider indicated that the children would be put at risk of harm if left alone with the mother, which is something that has happened in the past.  The father has left the children alone with the mother in the past, despite knowing about her active substance-abuse and mental-health issues

and even when she is unable to get out of bed or change diapers. The parents rely on their relatives to help care for the children day-to-day and supervise the mother. Family members also reported having to wake the mother up to care for the children. The father's admissions about his substance-abuse history are also at odds with his continued insistence he does not need treatment and his intention to stop substance-abuse treatment once court supervision ends. We need not wait for serious harm to befall the children. *See id.* We find the mother's substance-abuse and mental-health issues and the father's minimization of his substance abuse and indifference to treatment make it "imminently likely" that the children will suffer "harmful effects" to their physical and mental well-being. *See* Iowa Code § 232.2(6)(c)(2). At one point, the DHS had a different recommendation for these children, but circumstances changed. It is in the children's best interests to continue services and DHS supervision.

We reverse the dismissal of the petitions and remand for further proceedings adjudicating the children as CINA.

**REVERSED AND REMANDED WITH DIRECTIONS.**